1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TIMOTHY O'CONNOR,

                    Petitioner

          v.                                    C-1-05-177

JAMES ERWIN, WARDEN,

                    Respondent


### ORDER

This matter was referred pursuant to 28 U.S.C. § 636 to the United States Magistrate Judge for consideration and report on the Petition for Writ of Habeas Corpus filed by the petitioner pursuant to 28 U.S.C. § 2254.  The matter is before the Court upon the Report and Recommendation of the Magistrate Judge (doc. no. 4), which follows, recommending that the Petition for Writ of Habeas Corpus be dismissed, and upon petitioner's objections thereto (doc. no. 5).

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this case through counsel seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254.  The case is now before the Court upon the petition (Doc. 1), and respondent's return of writ and

2

exhibits thereto. (Doc. 3).

I.      **PROCEDURAL HISTORY**

This case involves the following facts, as summarized by the Twelfth

District Ohio Court of Appeals:[1]

> {¶ 2} In 1999, Timothy O'Connor, who resided in Middletown,
> Butler County, Ohio, took his computer to Christopher Bell, a
> part-time computer repairman, who resides in Warren County.
> While working on O'Connor's computer, Bell saw that it
> contained files of pornographic material, which included young
> children involved in explicit sexual acts with other children,
> adults, and animals. Bell contacted the Warren County Sheriff's
> Office, who subsequently obtained and
> executed a search warrant on O'Connor's computer. The Warren
> County deputies recovered files from the computer containing
> extensive material depicting children involved in explicit sexual
> activity.
>
> {¶ 3} The Warren County deputies contacted the City of
> Middletown police, who obtained a search warrant for O'Connor's
> residence. When Middletown police executed the search warrant,
> they discovered compact discs and floppy discs that contained
> approximately one thousand photographs depicting young
> children involved in explicit sexual acts with other children,
> adults, and animals. Approximately 30 of the photographs they
> recovered depicted the head of the minor daughter of O'Connor's
> fiancee "morphed" onto the nude bodies of adult females.
>
> {¶ 4} O'Connor was subsequently charged in Warren County with
> seven counts of illegal use of a minor in nudity-oriented material
> or performance and seven counts of pandering obscenity
> involving a minor. O'Connor was convicted of those charges and
> sentenced to a period of community control.

---

[1]  The factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

**{¶ 5} O'Connor was subsequently charged in Butler County with six counts of illegal use of a minor in nudity-oriented material or performance, four counts of pandering obscenity involving a minor, four counts of pandering sexually-oriented matter involving a minor and one count of receiving stolen property.**

**{¶ 6} O'Connor moved to suppress the evidence obtained from his home on the grounds that the search warrant obtained by the Middletown police was invalid. O'Connor also moved to dismiss the charges on double jeopardy grounds in light of his Warren County convictions. The trial court overruled both motions.**

**{¶ 7} O'Connor tendered a no contest plea to all fifteen counts in the indictment. The trial court accepted O'Connor's plea, found him guilty, and sentenced him to serve consecutive two year terms on counts one, three, and five, which charged him with illegal use of a minor in nudity-oriented material or performance. The trial court further ordered O'Connor to serve his sentences on the remaining 12 charges concurrent to his sentence on count one. O'Connor was also fined $10,000, and ordered to pay court costs.**

(Doc. 3, Exh. H at 2-3; see also Doc. 3, Exhs. A-E).

Represented by new counsel, petitioner filed a timely appeal of his conviction and sentence on August 22, 2001 and raised six assignments of error:

**1. THE TRIAL COURT ERRED IN OVERRULING MR. O'CONNOR'S MOTION TO SUPPRESS.**

**2. THE TRIAL COURT ERRED IN IMPOSING A FINDING OF GUILT FOLLOWING MR. O'CONNOR'S NO CONTEST PLEA BECAUSE THE FACTS ALLEGED IN THE INDICTMENT WERE INSUFFICIENT TO SUPPORT A CONVICTION AS A MATTER OF LAW.**

**3. THE TRIAL COURT ERRED IN ACCEPTING MR. O'CONNOR'S NO CONTEST PLEA WITHOUT INFORMING HIM OF THE POSSIBILITY OF POST-RELEASE CONTROL SUPERVISION.**

**4. THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES WITHOUT MAKING THE REQUISITE FINDINGS**

4

CONTAINED IN R.C. 2919.(B)(2)(c) [sic, R.C. 2929.19(B)(2)(c)] AND R.C. 2929.14(E)(4).

5.    THE TRIAL COURT ERRED IN TWICE SUBJECTING MR. O'CONNOR TO THE SAME CHARGES IN VIOLATION OF THE CONSTITUTIONAL PROHIBITION AGAINST DOUBLE JEOPARDY.

6.    MR. O'CONNOR WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND RELATED OHIO GUARANTEES.

(Doc. 3, Exh. F).  The State opposed the assignments of error.  On August 12, 2002, the appellate court overruled all but petitioner's fourth assignment of error and affirmed the judgment of the trial court.  The Court of Appeals found that the trial court failed to articulate its reasons for imposing consecutive sentences and instructed the trial court on remand to state its reasons for imposing consecutive sentences. (Doc. 3, Exh. H).  On remand, the trial court again imposed consecutive sentences for counts one, three and five, and articulated its reasons on the record in accordance with the remand order. (Doc. 3, Exh. I).  Petitioner's appeals with respect to this issue were unsuccessful. (Doc. 3, Exhs. J, K).

Petitioner timely appealed the August 12, 2002 Court of Appeals' decision to the Supreme Court of Ohio and raised the following propositions of law:

1.  Computerized "morphing" of the face of a minor onto the body of an adult does not violate Ohio's illegal use of a minor statute.

**2. Consecutive sentences are inappropriate where a defendant's conduct amounts to only a single violation of the statute.**

**3. An affidavit in support of a search warrant must demonstrate probable cause.**

**4. The trial court must inform a defendant of the possibility of post-release control supervision before accepting a guilty or no contest plea.**

**5. Double jeopardy prohibits a second prosecution for the same offense after a conviction.**

**6. A criminal defendant is constitutionally entitled to the effective    assistance of counsel at trial.**

(Doc. 3, Exh. L).  The State filed a memorandum in response.  (Doc. 3, Exh. M).  On December 18, 2002, the Supreme Court of Ohio denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  (Doc. 3, Exh. N).

Petitioner, through counsel, filed a post-conviction petition in the Butler County Common Pleas Court re-alleging his illegal search and seizure, free expression, double jeopardy, and ineffective assistance of counsel claims.  An evidentiary hearing was held on petitioner's ineffective assistance of counsel claim and on May 13, 2003, the trial court denied the petition. (Doc. 3, Exhs. O, P, Q, R).  Petitioner's appeal to the Twelfth District Ohio Court of Appeals and the Supreme Court of Ohio were denied.  (Doc. 3, Exhs. S-X).

On March 18, 2005, petitioner, through counsel, filed a Petition for Writ

6

of Habeas Corpus in this Court raising the following grounds for relief:

**Ground One**: The conviction was obtained by use of evidence gained as a result of a search pursuant to an invalid warrant.

**Supporting Facts**: The police searched O'Connor's residence after a computer technician, to whom O'Connor had taken his computer for repairs, reported evidence of child pornography. No nexus was established in the warrant between the computer and O'Connor's home.  The warrant therefore failed to establish probable cause for the search.

**Ground Two**: The conviction was obtained in violation of the First Amendment right to free expression.

**Supporting Facts**: Consistent with the First Amendment, the state lacks an interest in criminalizing nudity oriented material involving juveniles absent lewd exhibition or a graphic focus on genitals.  The indictment did not allege, and the state did not prove, that the images possessed by O'Connor met these standards.

**Ground Three**: The conviction was obtained in violation of the Fifth Amendment double jeopardy provision.

**Supporting Facts**: O'Connor was charged with and convicted of virtually identical charges on the same facts in a neighboring county.  The prosecution in Butler County was therefore barred by double jeopardy.

**Ground Four**: Ineffective assistance of counsel denied O'Connor the right to a fair trial.

7

**Supporting Facts: O'Connor's trial attorney rendered ineffective assistance of counsel by 1) failing to raise meritorious issues, including those listed in A-C above; 2) failing to properly advise O'Connor that he was charged with and pleading no contest to 2nd degree felonies, not 4th degree felonies; and 3) improperly advising O'Connor to plead no contest based on the unsubstantiated threat from the prosecutor that he would face additional charges if he didn't plead.**

(Doc. 1 at 5-6).

III.  STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).  *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).  In addition, the decision of the Ohio court of appeals is binding on this Court unless it is contrary to clearly established law or was based on an unreasonable determination of the facts of record.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

8

2.     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" have independent meanings:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts.  The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.  The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

Upon review of the entire record, this Court concludes that petitioner has failed to establish that the findings of the state appellate court are unreasonable as to justify federal habeas corpus relief.  *See Williams v. Taylor*, 529 U.S. 362 (2000).

## IV.  GROUND ONE IS WITHOUT MERIT.

Ground One of the petition asserts that petitioner's conviction was obtained by use of evidence gained as a result of a search pursuant to an invalid warrant in violation of the Fourth Amendment.  In overruling this assignment of error, the Ohio Court of Appeals stated:

9

{¶ 10} O'Connor argues the trial court erred by overruling his motion to suppress the child pornography seized from his residence pursuant to a search warrant because the affidavit submitted by police in support of the search warrant failed to establish a "nexus" between the place to be searched and the items to be seized and, therefore, failed to establish probable cause. O'Connor also contends that the trial court erred in considering evidence outside the "four corners of the affidavit" in determining whether the "good faith exception" to the exclusionary rule applies in this case. O'Connor contends that the good faith exception does not apply. We find O'Connor's arguments unpersuasive.

{¶ 11} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures and provides that " * * * no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Pursuant to the exclusionary rule, " * * * all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." Mapp v. Ohio (1961), 367 U.S. 643, 655, 81 S.Ct. 1684, 1691. Pursuant to the "good faith exception" to the exclusionary rule, however, evidence should not be suppressed when it is obtained by a reasonably well-trained police officer acting in objectively reasonable good faith reliance on a search warrant subsequently found deficient. United States v. Leon (1984), 468 U.S. 897, 104 S.Ct. 3405.

{¶ 12} Crim.R. 41(C) provides that an affidavit submitted by police to obtain a search warrant must state, among other things, "the factual basis for the affiant's belief" that "the property to be searched for and seized" is at "the place to be searched."

{¶ 13} The affidavit prepared and submitted by Middletown police officers Larry Fultz and Fred Shumake stated as follows:

{¶ 14} "Affiant (Shumake) was contacted by Det. Rick Logan of the Warren County Sheriffs [sic] Office that he had been contacted by Crisotpher [sic] Bell on June 2, 1999. Bell runs a computer repair business out of his residence. Bell had begun repair work on a computer belonging to Tim O'Connor who resides at 506 Eastline Drive, Middletown, Ohio. Bell advised Det.

10

Logan that while performing repair work he had observed files containing child pornography. At this time, Det. Logan secured a search warrant for the computer.

{¶ 15} "As Det. Logan explored the computer pursuant to the search warrant he observed files in the computer depicting child pornography, specifically, children ranging in age from one year to adult engaged in sexual acts including but not limited to, oral sex, intercourse, and masturbation. Also, some of these photos involved acts of bestiality.

{¶ 16} "Based on this information affiant wishes to search the residence of Tim O'Connor at 506 Eastline Dr. to recover any additional evidence of child pornography and to determine the identity of any victims involved."

{¶ 17} The affidavit submitted by Detective Shumake failed to expressly state the "nexus" or connection between O'Connor's residence and the child pornography, as required by Crim.R. 41(C). However, we conclude that the good faith exception to the exclusionary rule applies here, and, therefore, the defect in the affidavit did not invalidate the search warrant.

{¶ 18} At the suppression hearing, the state presented the testimony of Christopher Bell, Detectives Shumake and Logan, and the municipal court judge who issued the warrant. This evidence showed that Bell told Logan that the computer came from O'Connor's residence. At one point, according to Bell, O'Connor retrieved his hard drive from Bell's residence to copy files from it so that he would not lose them during Bell's reformatting of the computer. Logan related this information to Shumake, and the two of them related this information to the municipal court judge who issued the warrant.

{¶ 19} The police had a good faith basis for believing that the search warrant was valid because of the above information which they imparted to the issuing magistrate, and because of the obvious connection between the place to be searched, i.e., O'Connor's residence, and the items to be seized, i.e., evidence of child pornography. The nature of the evidence for which the police were searching allowed the magistrate to draw a reasonable inference that child pornography would likely be

11

found in O'Connor's residence, because O'Connor needed a secure place where he could keep such material <u>and</u> have access to it during his leisure time. See, generally <u>United States v. Singleton</u> (C.A.7, 1997), 125 F.3d 1097, 1102 ("In issuing a search warrant, a magistrate is given license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account, the nature of the evidence and the offense."). While it is possible that O'Connor might have kept the material elsewhere, such as at his place of business, it was only necessary that there be a "fair probability," rather than an absolute certainty, that the material would be at O'Connor's residence. <u>State v. George</u> (1989), 45 Ohio St.3d 325, paragraph one of the syllabus.

{¶ 20} O'Connor argues that the testimony of the officers who sought the search warrant and the magistrate who issued it should not have been admitted because evidence outside the four corners of the affidavit cannot be used to establish the good faith exception to the exclusionary rule. In support of his argument, O'Connor cites, among other cases, <u>State v. Klosterman</u> (1996), 114 Ohio App.3d 327, and <u>State v. Gales</u> (2001), 143 Ohio App.3d 55. These courts held that the determination of whether an officer's reliance on a search warrant ultimately determined to be invalid was objectively reasonable should be confined to the four corners of the affidavit. <u>Klosterman</u> at 332-333; <u>Gales</u> at 62.

{¶ 21} In determining whether probable cause exists to support the issuance of a search warrant, a trial court is confined to the four corners of the affidavit and any recorded testimony made part of the affidavit pursuant to Crim.R. 41(C). See <u>State v. Wesseler</u> (Feb. 17, 1998), Butler App. No. CA96-07-131, and Crim.R. 41(C). However, in determining whether the good faith exception to the exclusionary rule applies, this court and others have held that a court may look beyond the four corners of the affidavit and consider unrecorded oral testimony to determine whether the officer executing the search warrant did so in good faith reliance on the magistrate's issuance of the search warrant. See <u>Wesseler, Moya v. State</u> (1998), 335 Ark. 193, 202, 981 S.W.2d 521, 525-526, cited in Katz, Ohio Arrest, Search and Seizure, (2002 Ed.) 151, Section 8.2, fn. 2, and <u>United States v. Curry</u> (C.A.8, 1990), 911 F.2d 72, 78 (cited in <u>Moya</u>). The principle

12

in cases like <u>Wesseler</u>, <u>Moya</u>, and <u>Curry</u> is consistent with the statement in <u>Leon</u> that "all of the circumstances" may be considered in determining whether a reasonably well-trained police officer would have known that the search was illegal despite the magistrate's authorization. <u>Leon</u>, 468 U.S. at 922-923, fn. 23. See <u>Moya</u>, 335 Ark. at 201, 981 S.W.2d 521, 525.

{¶ 22} Accordingly, we hold that a court may go beyond the four corners of an affidavit submitted in support of a search warrant subsequently found to be invalid and consider unrecorded oral testimony to determine whether the police officer executing the search warrant did so in good faith reliance upon the magistrate having found probable cause to issue it. O'Connor's first assignment of error is overruled.

(Doc. 3, Exh. H at 4-9).

Federal courts will not address a Fourth Amendment claim upon habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal arrest in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

13

Ohio provides an adequate procedural mechanism for the litigation of Fourth Amendment claims in the form of a pretrial motion to suppress pursuant to Ohio R. Crim P. 12, and a direct appeal as of right from an order denying a motion to suppress pursuant to Ohio R. App. P. 3 and 5. *Riley*, 674 F.2d at 526. Therefore, under the first inquiry, Ohio's mechanism for the resolution of Fourth Amendment claims, in the abstract, presents the opportunity to raise such claims. *Id.*

Petitioner presented his Fourth Amendment claim to the trial court, the Ohio Court of Appeals, and the Supreme Court of Ohio. The trial court held a suppression hearing and issued a reasoned opinion on the issue. (Doc. 3, Exhs. B, C). Petitioner appealed to the Ohio Court of Appeals which found no merit to the claim. (Doc. 3, Exh. H at 4-9). The Supreme Court of Ohio denied leave to appeal because it was not persuaded to review the issue. (Doc. 3, Exh. N). Petitioner does not allege he lacked a full and fair opportunity to present his Fourth Amendment claim to the state courts. Nor has he shown any failure of Ohio's procedural mechanism which prevented him from litigating his Fourth Amendment claim. *See Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000) ("Seymour does not, and cannot, claim that the State of Ohio did not provide her with a full and fair opportunity to litigate her Fourth Amendment claims; indeed, she did so in a suppression hearing before trial."). Accordingly, any claim concerning the validity of the search

14

of petitioner's residence is not cognizable on habeas review pursuant to *Stone v. Powell*.  Therefore, petitioner's first ground for relief does not warrant federal habeas relief in this matter.

## V.  GROUND TWO IS WITHOUT MERIT.

Petitioner's second ground for relief asserts his conviction was obtained in violation of the First Amendment right to free expression.  In this regard, petitioner contends that neither the indictment nor the State's statement of facts at the plea hearing contained the allegation that the charged photographs constituted lewd exhibitions or involved a graphic focus on the genitals, and therefore involved a minor in the state of nudity.  As a result, petitioner argues, the finding of guilt on six counts of illegal use of a minor in nudity-oriented material was unsupported by sufficient evidence regarding the "state of nudity" element.

Respondent contends that petitioner procedurally defaulted and waived his second ground for relief by failing to fairly present this claim as an issue of constitutional dimension.  In the alternative, respondent contends that Ground Two of the petition is lacking in merit.

The Court finds petitioner fairly raised his First Amendment constitutional claim in the Ohio courts and that Ground Two of the petition is not waived.  (See Doc. 3, Exh. F at 10-12).  Petitioner fairly present to the state courts the constitutional nature of his First Amendment claim by

15

relying on federal cases employing a constitutional analysis, and by relying on state cases employing a constitutional analysis in similar factual contexts.

*See Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987).

Nevertheless, the Court determines that the state court's resolution of this claim is neither contrary to clearly established law or based on an unreasonable determination of the facts of record. The Twelfth District Court of Appeals, the last state court to issue a reasoned opinion on this issue, found as follows:

> {¶ 24} O'Connor argues that the trial court erred in finding him guilty on six counts of illegal use of a minor in nudity-oriented material or performance, a violation of R.C. 2907.323(A)(1),[2] following his no contest plea because the counts of the indictment charging him with that offense failed to allege an essential element of that offense, to wit, that the nudity involved lewdness or a graphic focus on the genitals. We disagree with this argument.

---

[2] R.C. 2907.323 provides in relevant part:

{¶ b} "(A) No person shall do any of the following:

{¶ c} "(1) Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity, unless both of the following apply:

{¶ d} "(a) The material or performance is, or is to be, sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance;

{¶ e} "(b) "The minor's parents, guardian, or custodian consents in writing to the photographing of the minor, to the use of the minor in the material or performance, or to the transfer of the material and to the specific manner in which the material or performance is to be used."

(Doc. 3, Exh. H at 9, n.1).

16

{¶ 25} "The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment [.]" Crim.R. 11(B)(2). "Where the indictment * * * contains sufficient allegations to state a felony offense and the defendant pleads no contest, the court must find the defendant guilty of the charged offense." State v. Bird, 81 Ohio St.3d 582, syllabus, 1998-Ohio-606, following State ex rel. Stern v. Mascio, 75 Ohio St.3d 422, 425, 1996-Ohio-93.

{¶ 26} Crim.R. 7(B) requires that an indictment "contain a statement that the defendant has committed a public offense specified in the indictment." The required statement may be made "in ordinary and concise language without technical averments or allegations not essential to be proved." Id. The statement may be (1) in the words of the applicable section of the statute under which defendant is charged, provided the words of that statute charge an offense, or (2) in words sufficient to give the defendant notice of all the elements of the offense with which he is charged. Crim. R. 7(B).

{¶ 27} The six counts of the indictment charging O'Connor with illegal use of a minor in nudity-oriented material or performance followed the words of R.C. 2907.323(A)(1). Nevertheless, O'Connor argues that this was insufficient to state an offense. In support of this assertion, O'Connor cites State v. Moss (Apr. 14, 2000), Hamilton App. No. C-990631. In that case, the defendant entered a no contest plea to one count of illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3). He was found guilty and sentenced to three years of community control. The court of appeals reversed Moss' conviction and discharged him, finding that while the indictment mirrored the language of R.C. 2907.323(A)(3), the indictment failed to allege that the material forming the basis of the charge was lewd or graphically focused on the genitals. The court found such an allegation to be a "judicially engrafted" element of the crime in light of State v. Young (1988), 37 Ohio St.3d 249, reversed on other grounds in Osborne v. Ohio (1990), 495 U.S. 103, 110 S.Ct. 1691. Therefore, the court concluded that the facts alleged in the indictment were insufficient to state a punishable offense." The court reversed the defendant's conviction and discharged him from further prosecution.

17

{¶ 28} O'Connor requests that we follow <u>Moss</u> and reverse his conviction on the six counts of illegal use of a minor in nudity-oriented material or performance. We decline to do so.

{¶ 29} <u>Young</u> held that "R.C. 2907.323(A) prohibits the possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, and where the person depicted is neither the child nor ward of the person charged." <u>Young</u>, paragraph one of the syllabus. By limiting the statute's operation to nudity that involves lewdness or graphic focus on the genitals, the Ohio Supreme Court avoided penalizing persons for viewing or possessing innocuous photographs of naked children, causing the statute to "plainly survive[ ] overbreadth scrutiny." <u>Osborne</u>, 495 U.S. at 113-114.

{¶ 30} <u>Young</u> narrowly construed the definition of "nudity" to require that it involve a lewd exhibition or graphic display of the genitals to prevent the statute from being held invalid on overbreadth grounds. However, it did not, as the majority in <u>Moss</u> found, "judicially engraft[ ]" an element onto R.C. 2907.323. As the dissent in <u>Moss</u> indicated, only the legislature, not the judiciary, has the power to engraft or enact additional elements to the offense. See R.C. 2901.03(A), which provides that "[n]o conduct constitutes a criminal offense against the state unless it is defined as an offense in the Revised Code."

{¶ 31} The plain words of Crim. R. 7(B) require that the statement in the indictment be "in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." (Emphasis added.) While <u>Osborne</u> may limit the proof of "a state of nudity" to lewdness or graphic focus on the genitals, in order to meet a constitutional objective, it does not alter the elements of R.C. 2907.323(A)(1).

{¶ 32} Here, the indictment gave O'Connor notice of all the elements of the offense with which he was charged; therefore, it complied with Crim. R. 7. Furthermore, at the plea acceptance hearing, the state introduced into evidence, as part of its statement of facts, the photographs that formed the basis for the

18

six counts of illegal use of a minor in nudity-oriented material or performance. The photographs depicted lewdness[3] and had a graphic focus on the genitals.

{¶ 33} Together, the indictment and the additional photographic evidence were sufficient to support the trial court's finding that appellant was guilty of violating R.C. 2907.323(A)(1). The trial court therefore did not err in finding O'Connor guilty of those charges following his no contest plea. O'Connor's second assignment of error is overruled.

(Doc. 3, Exh. H at 9-14).

While the depiction of nudity, without more is protected expression under the First Amendment, *New York v. Ferber*, 458 U.S. 747, 765 n. 18 (1982); *Erznoznik v. Jacksonville*, 422 U.S. 205, 213 n. 10 (1975), child pornography is unprotected speech subject to regulation by the states. *Id.* The "lewd exhibition of [a child's] genitals" is permissibly prohibited under the First Amendment. *Ferber*, 458 U.S. at 751, 773-74. In *Osborne v. Ohio*, 495 U.S. 103 (1990), the Supreme Court considered whether Ohio Rev. Code § 2907.323(A)(3), which prohibits the possession of "nude" photographs of minors, was overbroad. After noting that "depictions of nudity, without more, constitute protected expression," *Id.* at 112, the Court concluded that the statute was not overbroad under the First Amendment because the Ohio

---

[3] <u>Young</u>, 37 Ohio St.3d 249, 525 N.E.2d 1363, does not define the term "lewdness," but the Ohio Supreme Court has said elsewhere that "lewdness" is not a legal term of art but rather a word of common usage. <u>State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals</u> (1992), 63 Ohio St.3d 354, 358. The court went on to cite the dictionary definition of "lewd," as, " * * * sexually unchaste or licentious * * * lascivious * * * inciting to sensual desire, or imagination * * *." Id., citing Webster's Third New International Dictionary (1986) 1301.

(Doc. 3, Exh. H at 13, n.2).

19

Supreme Court had construed it to prohibit only materials involving "a lewd exhibition or . . . a graphic focus on the genitals," and the person depicted could be "neither the child nor the ward of the person charged." *Id.* at 113 (citing *State v. Young*, 37 Ohio St.3d 249, 252, 525 N.E.2d 1363, 1368 (1988)).  In *Young*, the Supreme Court of Ohio determined that "[t]he clear purpose of [the exceptions listed in the statute] is to sanction the possession or viewing of material depicting nude minors where that conduct is morally innocent.  Thus, the only conduct prohibited by the statute is conduct which is *not* morally innocent, *i.e.*, the possession or viewing of the described material for prurient purposes.  So construed, the statute's proscription is not so broad as to outlaw all depictions of minors in a state of nudity, but rather only those depictions which constitute child pornography." 37 Ohio St.3d at 252, 525 N.E.2d at 1367 (emphasis in original).  The United States Supreme Court in *Osborne* concluded that the limitations recognized by the Supreme Court of Ohio were adequate to prevent convictions for "innocuous photographs of naked children," 495 U.S. at 114, and thus the statute passed constitutional muster.

The relevant clearly established Federal law, as determined by the Supreme Court in *Ferber* and *Osborne,* is that "the First Amendment protects nudity that involves no exploitation of children–as, for example, where a parent innocuously photographs his or her naked infant–but that

20

states may prohibit materials and conduct involving the exploitation of children– exemplified, for example, by photographs of children other than the defendant's child that depict lewd exhibitions or a graphic focus on the child's genitals." *Mikesell v. Conley*, 51 Fed. Appx. 496, 503 (6th Cir. 2002). Applying this standard, the Ohio Court of Appeals found no violation of petitioner's rights because his conviction was supported by both the indictment *and* the additional photographic evidence, presented at the plea hearing, which depicted lewdness and had graphic focus on the genitals.  As the Court of Appeals found, the photographs contained depictions of "young children involved in explicit sexual acts with other children, adults, and animals," approximately 30 of which "depicted the head of the minor daughter of O'Connor's fiancee 'morphed' onto the nude bodies of adult females." (Doc. 3, Exh. H at 2).  These factual findings are entitled to a presumption of correctness and petitioner has presented no clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to demonstrate that the state court's resolution of his First Amendment claim was contrary to or an unreasonable application of Supreme Court precedent as established in *Ferber* and *Osborne*.  Thus, petitioner is not entitled to habeas corpus relief on his second ground for relief.

## VI.  GROUND THREE IS WITHOUT MERIT.

In his third ground for relief, petitioner contends his Butler County

conviction violated the Fifth Amendment prohibition against double jeopardy because he "was charged with and convicted of virtually identical charges on the same facts in a neighboring county," to wit, Warren County. (Doc. 1 at 6). In rejecting this claim, the Butler County Court of Appeals stated:

> {¶ 46} O'Connor argues the trial court erred by not dismissing the charges against him on double jeopardy grounds. We disagree with this argument.
>
> {¶ 47} To dismiss a case on double jeopardy grounds, the trial court must find that (1) there was a former prosecution in the same state for the same offense, (2) the same person was in jeopardy in the first prosecution, (3) the parties are identical in the two prosecutions, and (4) "the particular offense, on the prosecution of which the jeopardy attached, was such an offense as to constitute a bar." State v. Best (1975), 42 Ohio St.2d 530, 533.
>
> {¶ 48} Here, O'Connor has failed to show there was a former prosecution in the same state for the same offense. O'Connor's possession of the child pornography on his computer's hard drive in Warren County constituted one offense, while his possession of the child pornography on compact discs and floppy discs in Butler County constituted a separate and distinct offense. O'Connor could be prosecuted for both offenses.
>
> {¶ 49} Accordingly, O'Connor's fifth assignment of error is overruled.

(Doc. 3, Exh. H at 17-18)(emphasis in the original).

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Constit. amend. V.  This guarantee against double jeopardy, made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784,

22

794 (1969), protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for a single offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989).  In determining whether a defendant is being prosecuted for the "same offense," the Supreme Court of Ohio in  *State v. Best* (1975), 42 Ohio St.2d 530, 533 (1975), cited by the Butler County Court of Appeals, adopted the "same elements" test articulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), *i.e.*, "whether each [statutory] provision requires proof of a fact which the other does not."  The *Blockburger* test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696 (1993).

In the Warren County prosecution, petitioner was charged with and convicted of pandering obscenity involving a minor in violation of Ohio Rev. Code § 2907.321(A)(5)[4] and illegal use of a minor in nudity-oriented material

---

[4]  Section 2907.321(A)(5) which proscribes pandering obscenity involving a minor provides:
(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
(5) Buy, procure, possess, or control any obscene material, that has a minor as one of its participants[.]

23

or performance in violation of Ohio Rev. Code § 2907.323(A)(3)[5] for having child pornography on his computer hard drive which was located at a repair shop in Warren County.  In the Butler County prosecution, petitioner was charged with violations of  Ohio Rev. Code § 2907.323(A)(1)[6] based on materials on CD roms and floppy disks seized from petitioner's Butler County

---

[5]  Section 2907.323(A)(3) which proscribes the illegal use of a minor in nudity-oriented material or performance provides:
(A) No person shall do any of the following:
(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies:
(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.
(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred.


[6]  Section 2907.323(A)(1) which proscribes the illegal use of a minor in nudity-oriented material or performance provides:
(A) No person shall do any of the following:
(1) Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity, unless both of the following apply:
(a) The material or performance is, or is to be, sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance;
(b) The minor's parents, guardian, or custodian consents in writing to the photographing of the minor, to the use of the minor in the material or performance, or to the transfer of the material and to the specific manner in which the material or performance is to be used.

24

home. (Doc. 3, Exh. B, Tr. 32).[7]  Section 2907.323(A)(3) prohibits the possession or viewing of materials or performances while section 2907.323(A)(1) prohibits the photography, creation, production or transfer of materials or performance.  Since each offense contains an element not contained in the other, they do not constitute the same offense and Double Jeopardy does not bar petitioner's subsequent prosecution.

Accordingly, this Court concludes that under the applicable standard of review set forth in 28 U.S.C. § 2254(d), the Ohio Court of Appeals' challenged adjudication of petitioner's double jeopardy claim was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court in addressing double jeopardy violations.  Therefore, petitioner is not entitled to federal habeas relief based on the double jeopardy claim alleged in Ground Three.

## VII.  GROUND FOUR IS WITHOUT MERIT.

Ground Four of the petition alleges the ineffective assistance of trial counsel. (Doc. 1 at 6).  Specifically, petitioner contends his trial attorney rendered ineffective assistance of counsel by: (1) failing to raise meritorious issues, including those asserted as Grounds One through Three of the

---

[7]  *See State v. O'Connor*, Case No. CR00-05-0712 (Court of Common Pleas, Butler County, Ohio Apr. 13, 2001)(decision denying motion to dismiss on the basis of double jeopardy), found at http://www.butlercountyclerk. org/pa/pa.urd/pamw2000-docket_lst?37598694.  This Court may take judicial notice of proceedings in other courts of record. *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980)(quoting *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969), *cert. denied*, 397 U.S. 1065 (1970)).

petition; (2) failing to properly advise petitioner he was charged with and pleading no contest to 2nd degree felonies, not 4th degree felonies; and (3) improperly advising petitioner to plead no contest based on the unsubstantiated threat from the prosecutor that he would face additional charges if he did not plead.

To demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. *Id*. at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id*. at 688. Under the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *Id*. at 694.

In a case such as this involving a conviction obtained upon the entry of

26

no contest or guilty pleas, the second "prejudice" prong of the *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). This means that in order to demonstrate prejudice in the no contest plea context, petitioner must show a reasonable probability exists that, but for counsel's alleged errors, he would not have pleaded no contest and would have insisted on going to trial. *See id.*

With regard to petitioner's claim that trial counsel failed to raise the "meritorious" issues listed as Grounds One through Three of the petition, as demonstrated above, petitioner's first three grounds for relief do not have merit and cannot support a claim of ineffective assistance of counsel in this habeas corpus proceeding.

Petitioner also claims that trial counsel failed to properly advise him on his no contest plea. The trial court held an evidentiary hearing on petitioner's post-conviction petition claim of ineffective assistance of counsel. At the hearing, petitioner testified that the day before his plea hearing, he obtained a copy of the amended indictment from his attorney's office. (Doc. 3, Exh. Q, Tr. 22). While utilizing statutory language from the second-degree felony section of Ohio Rev. Code § 2907.323, the amended indictment indicated that the charges were instead felonies of the fourth degree under subsection (A)(3) (Doc. 3, Exh. Q, Tr. 21, 28-29, Exh. S at 3),

which petitioner believed carried a presumption of non-custodial punishment. (Doc. 3, Exh. Q, Tr. 22). However, on the morning of the plea hearing, petitioner discovered a mistake had been made and that the charges were actually second degree felonies under subsection (A)(1). (Doc. 3, Exh. Q, Tr. 22-25, 29-30). Petitioner admitted that before his plea was taken, the charges were amended to specify second degree felonies under subsection (A)(1) and that he reviewed with his attorney the "lengthy multiple page document that laid out every one of the 15 charges" to which he pled. (Doc. 3, Exh. Q, Tr. 30, 31). Petitioner also admitted that there were hundreds of images on the CDs in his house that the prosecutor had reviewed and that the prosecutor was prepared to take additional images to the Grand Jury if petitioner did not plead to the indictment. (Doc. 3, Exh. Q, Tr. 31).

Petitioner's former trial counsel also testified at the evidentiary hearing. He confirmed that the day prior to the plea hearing, he believed that the amended indictment charged petitioner with felonies of the fourth degree, but found out otherwise on the date of the hearing. (Doc. 3, Exh. Q, Tr. 48-49). That date, Mr. Piper, the county prosecutor, informed trial counsel that petitioner either plead as charged on all the charges or the prosecutor would seek indictments on six or eight additional felony two charges. (Doc. 3, Exh. Q, Tr. 49). Based on his previous dealings with the prosecutor and the number of photographic images that had been seized,

28

trial counsel did not view the prosecutor's ultimatum as an idle threat. (Doc. 3, Exh. Q, Tr. 49-51).

Counsel testified:

>    A.  I hate to use the word "threat," but I'm going to.  Mr. Piper never told me anything that I considered a threat as to additional charges that he didn't follow through with.
>
>    Q.  Faced with what you have explained, did you discuss all of those ramifications with your client?
>
>    A.  Yes, I did.
>
>    Q.  And on that day, did he appear interested in taking his chances on whether that threat was just an idle threat?
>
>    A.  Did not appear so to me.

(Doc. 3, Exh. Q, Tr. 51).  Counsel testified that he "went to Mr. O'Connor and told him what Mr. Piper had said, and it was his decision.  I don't make recommendations." (Doc. 3, Exh. Q at Tr. 58).  Petitioner thereafter pled no contest to the pending charges.

The trial court rejected petitioner's claims of ineffective assistance of trial counsel, finding:

>    [T]he court allowed Mr. O'Connor to present evidence on the issue of ineffective assistance of counsel that was de hors the record. Mr. O'Connor's main witness was previous trial counsel, Paris Ellis, who indicated that on June 8, 2002, in the morning *they learned that one of the charges 2932(A)(5) had been raised from a felony four to a felony two* pursuant to an amended indictment that had been filed the day before. Mr. Ellis indicated at the time the matter was without investigation and that defendant had been told by the prosecution that if he did not plea to the amended charge, additional charges would be filed in

29

> the Grand Jury. Defense counsel indicated that the plea that was made was the best they could do at that point in time, and they went ahead and entered a plea to the charge. The court notes that this course of conduct falls under trial strategy.

(Doc. 3, Exh. R at 2)(emphasis added). The Court of Appeals, citing *Strickland v. Washington*, affirmed the trial court's finding on this matter. (Doc. 3, Exh. U).

Although petitioner claims trial counsel failed to "properly" advise him that he was charged with and pleading no contest to second degree felonies, the trial court found, and the testimony from petitioner at the evidentiary hearing shows, that petitioner was aware that a mistake had been made in the amended indictment which was discovered the morning of the plea hearing. Petitioner was aware that the mistake had been corrected to reflect charges of second degree felonies under section 2907.323(A)(1) prior to the taking of his no contest plea. Petitioner fails to present any evidence, let alone clear and convincing evidence, indicating he believed he in fact was pleading to fourth degree felonies. His claim in this habeas corpus proceeding to the contrary is without merit.

In addition, the Ohio courts correctly identified and reasonably applied the proper standard of review clearly established by the Supreme Court in *Strickland* and *Hill* in evaluating petitioner's ineffective assistance of trial counsel claims. Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance, and a petitioner in habeas

30

corpus must overcome a presumption that challenged conduct of counsel was a matter of strategy. *Strickland,* 466 U.S. at 689.  The trial court reasonably concluded that trial counsel exercised reasonable trial strategy in advising petitioner to plead no contest in view of the additional felony two charges that could be brought by the prosecutor.  Petitioner has not demonstrated that his trial counsel's representation fell outside the wide range of reasonable professional assistance.  *See Strickland,* 466 U.S. at 687.

Nor has petitioner demonstrated that there is a reasonable probability that, but for counsel's alleged errors, he would not have pleaded no contest but would have insisted on going to trial. *Hill,* 474 U.S. 52, 58-59.  Petitioner has presented no evidence that he would have insisted on going to trial in lieu of entering a plea.  At the evidentiary hearing, he testified he "doubted" he would have pled no contest that day but for the threat of additional charges. (Doc. 3, Exh. Q, Tr. 24-25).  The testimony also shows petitioner was not inclined to go to trial because of the cost involved in taking his case to trial. (Doc. 3, Exh. Q, Tr. 45, 47).  Petitioner has also failed to show a reasonable probability that but for counsel's alleged errors he would not have pleaded no contest because there would have been a reasonable chance that he would have been acquitted had he insisted on going to trial. *Hill,* 474 U.S. at 59-60.  Therefore, petitioner has failed to satisfy the "prejudice" inquiry

31

## Conclusion

Upon review of the state court transcript and records submitted by respondent, this Court concludes that the Ohio courts reasonably applied the *Strickland/Hill* standard in determining that petitioner failed to demonstrate his counsel was ineffective based on the claims before it. Accordingly, petitioner's fourth ground for relief is without merit and should be denied.

IT IS THEREFORE RECOMMENDED THAT:

Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is DENIED WITH PREJUDICE.

## <u>OBJECTIONS</u>

Petitioner objects to the recommendation of the Magistrate Judge to dismiss his Writ of Habeas Corpus with prejudice. Petitioner argues that the Court should grant his Writ because the state court proceedings resulted in a decision that involved an unreasonable application of federal law.

All of the issues raised in Mr. O'Connor's objections were addressed by the Twelfth District Ohio Court of Appeals. As such, in the absence of clear and convincing evidence to the contrary, the factual findings of the state appellate court are entitled to a presumption of correctness. 28 U.S.C. Section 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir.2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir.2001).

Petitioner argues in the first objection that petitioner's convictions

32

require reversal  because the facts alleged in the indictment and in the statement of facts at his plea were insufficient to support his conviction as a matter of law.  Petitioner relies on the Ohio Supreme Court holding that the private possession or creation of images depicting children in a state of nudity cannot be criminalized absent a showing that the images constitute lewd exhibitions or involve a graphic focus on the genitals.  *State v. Young*, 37 Ohio St. 3d 249, 25 N.E.2d 1363 (Ohio 1988), reversed on other grounds in *Osborne v. Ohio,* 495 U.S. 103(1990).   Mr. O'Connor argues that the indictment must specifically allege the images constitute lewd exhibitions or involve a graphic focus on the genitals because these allegations are an essential element of the crime.   Application of this analysis, he claims, requires reversal of at least six of his convictions.

During petitioner's sentencing hearing, the state introduced into evidence as part of its statement of facts, photographs that formed the basis for  the six counts of illegal use of a minor in nudity-oriented material or performance.  This photographic evidence clearly depicted lewdness and had graphic focus on the genitals.  The evidence presented at the plea hearing was legally sufficient to sustain petitioner's conviction.  Further, as the Ohio Court of Appeals held, the indictment was sufficient to charge the offenses because these allegations clearly are not an element of the crime.  The Court agrees that it is only within the power of the legislature to determine the

33

elements of a crime.

The Court has made a *de novo* review of the entire record on this issue. The Court finds the petitioner has not presented clear and convincing evidence to contradict the factual findings of the state appellate court. The Court finds the decision of the Ohio Court of Appeals is not contrary to clearly established law or based on an unreasonable determination of the facts of record. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Accordingly, the decision is binding on this Court, as found by the Magistrate Judge. Petitioner's first objection is DENIED.

Petitioner argues in his second objection that his conviction in Butler County, Ohio is the second prosecution and conviction for the same offense in violation of the Double Jeopardy clause of the Fifth Amendment to the United States Constitution.

In the Warren County, Ohio case, Petitioner was charged with violations of Ohio Revised Code Sections 2907.321(A)(5) and 2907.323(A)(3). In the case in Butler County, Ohio, Petitioner was charged with violations of Ohio Revised Code Section 2907.323(A)(1). The Warren County prosecution was for having child pornography in his computer hard drive located in a repair shop in Warren County. The Butler County prosecutions were based on materials on CD roms and floppy discs seized in Butler County Ohio.

Petitioner recognizes the four-factor test set forth in *State v. Best*, 42

34

Ohio St.2d 530, 330 N.E.2d 421 (Ohio 1975) for determining when prior proceedings constitute double jeopardy.  Arguing that his prosecutions in the same state involved "identical photographs and computer files", he contends the trial court erred in denying his motion.

The Court has made a *de novo* review of the entire record on this issue. The Court finds the petitioner has not presented clear and convincing evidence to contradict the factual findings of the state appellate court that there was no double jeopardy in the case.  Accordingly , those findings are entitled to a presumption of correctness. 28 U.S.C. Section 2254(e)(1).  See *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir.2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir.2001).  The Court finds the decision of the Ohio Court of Appeals is not contrary to clearly established law or based on an unreasonable determination of the facts of record.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Accordingly, the decision is binding on this Court, as found by the Magistrate Judge.  Petitioner's second objection is DENIED.

In his third objection, Petitioner argues he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.  He bases this claim on deficiencies in the performance of his attorney leading up to his entering a plea of No Contest.

Mr. O'Connor claims he was deprived of his right to the effective

assistance of counsel in violation of his Sixth Amendment right to counsel when his attorney failed to investigate the prosecutor's "unsubstantiated threat" to indict him on additional counts if he decided to proceed to a trial.

Mr. O'Connor also claims he was deprived of his right to the effective assistance of counsel in violation of his Sixth Amendment right to counsel because he felt pressured into entering a plea without having ample opportunity to discuss his decision with his attorney.  The record does not support such a finding.  Petitioner testified that he had knowledge of and experience in the legal system.  Petitioner has presented no clear and convincing evidence that the prosecutor's alleged "threat" was unsubstantiated or that there was a reasonable probability that he would have insisted on a trial. Petitioner did not want to incur the expense of a trial.  The evidence against him is overwhelming.  His counsel preserved petitioner's rights to appeal the critical issues in this case which, if decided in his favor, would have prevented his convictions.  Those issues have been preserved throughout the entire proceeding and once again decided adversely to petitioner by this Court.

The Court has made a *de novo* review of the entire record on this issue, particularly the transcript of the hearing, which support a finding that his attorney's representation did not fall below an objective standard of reasonableness, and that the petitioner was not prejudiced by his attorney's

performance.  *See Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner has not met his burden of showing that, but for counsel's alleged errors, he would have insisted on going to trial.

The Court finds the petitioner has not presented clear and convincing evidence to contradict the factual findings of the state appellate court. Accordingly , those findings are entitled to a presumption of correctness. 28 U.S.C. Section 2254(e)(1).  See *McAdoo v. Elo*, 365F.3d 487, 493-94 (6th Cir.2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir.2001).  The Court finds the decision of the Ohio Court of Appeals is not contrary to clearly established law or based on an unreasonable determination of the facts of record.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Accordingly, the decision is binding on this Court, as found by the Magistrate Judge.

## CONCLUSION

Accordingly, the Court accepts the factual findings and legal reasoning of the Magistrate Judge and hereby ADOPTS his Report and Recommendation dated December 22, 2006.  The Petition for Writ of Habeas Corpus is, therefore, DENIED.

A certificate of appealability shall not issue because petitioner has failed to make a substantial showing of the denial of a constitutional right based on the claims raised in the petition.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of

37

any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENIES petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

This case is DISMISSED AND TERMINATED on the docket of this Court. IT IS SO ORDERED.

s/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court